UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SOON LIM LEE, On Behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>SPEAR & JACKSON, INC., WILLIAM FLETCHER and DENNIS CROWLEY,<br><br>Defendants. | No. 04-80375<br><br>CIV-RYSKAMP<br><br>MAGISTRATE JUDGE<br>VITUNAC<br><br>DEMAND FOR JURY TRIAL |



## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

### SUMMARY AND OVERVIEW

1.  This is a securities class action on behalf of all purchasers of the publicly traded securities of Spear & Jackson, Inc. ("SJCK" or the "Company") between July 14, 2003 and April 15, 2004 (the "Class Period"), against SJCK and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.  SJCK manufactures and distributes tools, garden tools, metrology equipment, woodworking tools and magnetic equipment. It sells its products under Spear & Jackson, Neill Tools, Bowers, Robert Sorby, Moore and Wright, Eclipse (Blades) WHS, Tyzack, and Eclipse Magnetics Brands. SJCK has divisions throughout England, France and Australia. SJCK distributes its products throughout the world.

3.  The true facts which were known by each of the defendants, but concealed from the investing public during the Class Period, were as follows:

- 1 -



- 2 -

(a) That defendant Dennis Crowley ("Crowley") has orchestrated a "pump-and-dump" scheme to manipulate the share price of SJCK stock. Starting in 2002, Crowley, along with an Orlando, Florida-based stock promoter, International Media Solutions ("IMS"), and IMS' two principals, Yolanda Velazquez and Kermit Silva, used false information to tout SJCK stock to registered representatives and broker-dealers around the country.

(b) That Crowley used nominee companies based in the British Virgin Islands illegally to obtain over 1.2 million shares of SJCK stock during 2002, some of which he obtained through the filing of a fraudulent Form S-8 registration statement. The U.S. Securities and Exchange Commission's (the "Commission") complaint alleges that during the time that Crowley and IMS promoted SJCK shares, Crowley sold almost 650,000 of these shares, realizing over $3 million in profits. Crowley also transferred some of the illegally-obtained SJCK shares to IMS, which sold them for approximately $1.6 million.

(c) That the Company's repurchase of shares was not in compliance with applicable rules.

(d) That the Company never had any intent on making open market purchases as suggested in its January 16, 2004 release.

(e) That the Company was not on track to achieve earnings of $0.50 to $0.55 per share for 2004.

4. As a result of the defendants' false statements, SJCK's stock price traded at inflated levels during the Class Period, increasing to as high as $9.55 on July 15, 2003, whereby the Company's top officers and directors sold more than $3 million worth of their own shares.

5. On April 16, 2004, *Bloomberg* announced:

U.S. securities regulators sued Spear & Jackson Inc. Chief Executive Dennis Crowley, alleging he used false information to boost the British tool-making company's stock price while secretly selling $3 million in shares.

U.S. District Court Judge Donald M. Middlebrooks in West Palm Beach, Florida, appointed a corporate monitor yesterday to oversee the company at the request of the U.S. Securities and Exchange Commission, according to a statement released today by the agency's Miami office.

"This is an instance of a public company's chief executive profiting at the expense of shareholders and trying to hide it offshore," SEC lawyer Ivan Harris said.

Spear & Jackson, based in Sheffield, England, makes premium hand and garden tools that sell worldwide under brand names such as Eclipse, Bowers and Neill Tools. The company also makes precision measurement tools. Its shares trade on the Over-the-Counter Bulletin Board in the U.S.

Crowley, 42, who is also chairman, works out of the company's U.S. office in Boca Raton, Florida. He didn't respond to a call to Spear & Jackson and his residential phone listing in Boca Raton was disconnected. His lawyer couldn't be located for comment.

The SEC alleged in a civil lawsuit that Crowley orchestrated a classic "pump-and-dump" scheme, manipulating Spear & Jackson's share price over the last two years by using false information to tout the stock while at the same time selling shares in secret. Crowley sold the stock through U.S. brokerage accounts, hiding his identity behind front companies in the British Virgin Islands, the SEC said.

U.S. law requires company executives to disclose their transactions in company stock.

Spear & Jackson shares fell 52 cents to $1.85 at 10:25 a.m. The shares have declined 88 percent from their high last June 23, when the company announced that its Bowers Metrology division had won a contract with Moog Inc. to supply gauges for critical measurements of military and commercial airlines. Moog is a maker of control systems for aerospace products.

## JURISDICTION AND VENUE

6.  Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

7.  (a)  Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

(b)  The Company's principal executive offices are in Boca Raton, Florida, where the day-to-day operations of the Company are directed and managed by defendant Crowley.

## THE PARTIES

8.  Plaintiff Soon Lim Lee purchased SJCK publicly traded securities as described in the attached certification and was damaged thereby.

9.  Defendant Spear & Jackson, Inc. ("SJCK") is one of the largest and oldest tool manufacturers in the United Kingdom. It manufactures and distributes tools, garden tools, metrology equipment, woodworking tools and magnetic equipment. It sells its products under Spear & Jackson, Neill Tools, Bowers, Robert Sorby, Moore and Wright, Eclipse (Blades) WHS, Tyzack, and Eclipse Magnetics Brands. SJCK has divisions throughout England, France and Australia. SJCK distributes its products throughout the world.

10.  Defendant William Fletcher ("Fletcher") was the Chief Financial Officer of SJCK.

11.  Defendant Dennis Crowley ("Crowley") was Chairman of the Board, CEO and a director of SJCK. During the Class Period, Crowley secretly sold more than $3 million worth of his SJCK stock.

12.  The individuals named as defendants in ¶¶10-11 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SJCK's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press

releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶20-27, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SCIENTER

13.     In addition to the above-described involvement, each Individual Defendant had knowledge of SJCK's problems and was motivated to conceal such problems. Fletcher, as CFO, was responsible for financial reporting and communications with the market. Many of the internal reports showing SJCK's forecasted and actual growth were prepared by the finance department under Fletcher's direction. Defendant Crowley, as CEO and Chairman, and was responsible for the financial results and press releases issued by the Company. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

14.     Defendants were motivated to engage in the fraudulent practices alleged herein in order to inflate the Company's shares for the defendants to reap millions in insider trading proceeds.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

15.     Each defendant is liable for (i) making false statements *or* (ii) failing to disclose adverse facts known to him about SJCK. Defendants' fraudulent scheme and course of business that

operated as a fraud or deceit on purchasers of SJCK publicly traded securities was a success, as it (i) deceived the investing public regarding SJCK's prospects and business; (ii) artificially inflated the prices of SJCK's publicly traded securities; (iii) allowed defendants to secretly arrange to sell and actually sell in excess of $3 million worth of SJCK shares at artificially inflated prices; and (iv) caused plaintiff and other members of the Class to purchase SJCK publicly traded securities at inflated prices.

## BACKGROUND & SUMMARY

16.     The U.S. Securities and Exchange Commission ("Commission") announced that on April 15, 2004 it filed a complaint and obtained a temporary restraining order and other emergency relief against SJCK and its CEO Crowley. The Commission's complaint charges that for the last two years, Crowley has been secretly selling SJCK stock through brokerage accounts in the name of nominee companies based in the British Virgin Islands. To date, Crowley's illegal sales of SJCK stock total more than $3 million. At the Commission's request, Judge Donald P. Middlebrooks of the United States District Court for the Southern District of Florida also issued an Order temporarily barring Crowley from serving as an officer or director of any public company, and appointing a Corporate Monitor to oversee SJCK's affairs.

17.     According to the Commission's complaint, SJCK is a household tool manufacturer and distributor with over 750 employees and operations around the world. For its fiscal year ended September 30, 2003, SJCK had revenues of more than $90 million, with a majority of those revenues coming from the United Kingdom and other European countries.

18.     The Commission's complaint alleges that over the past two years, Crowley has orchestrated a pump-and-dump scheme to manipulate the share price of SJCK stock. Starting in

2002, Crowley, along with an Orlando, Florida-based stock promoter, IMS, and IMS' two principals, Yolanda Velazquez and Kermit Silva, used false information to tout SJCK stock to registered representatives and broker-dealers around the country.

19.     Crowley profited from that increase in SJCK's stock price by selling stock that he secretly held in the names of nominee companies. According to the Commission's complaint, Crowley used nominee companies based in the British Virgin Islands illegally to obtain over 1.2 million shares of SJCK stock during 2002, some of which he obtained through the filing of a fraudulent Form S-8 registration statement. The Commission's complaint alleges that during the time that Crowley and IMS promoted SJCK shares, Crowley sold almost 650,000 of these shares, realizing over $3 million in profits. Crowley also transferred some of the illegally-obtained SJCK shares to IMS, which sold them for approximately $1.6 million.

### DEFENDANTS' FALSE AND MISLEADING
### STATEMENTS ISSUED DURING THE CLASS PERIOD

20.     On July 14, 2003, over *Business Wire*, the Company issued a press release confirming the Company's earlier guidance:

> Spear & Jackson, reconfirmed the guidance for the third quarter profits of .16 - .18 cents per fully diluted share.
>
> Dennis Crowley, Chairman and Chief Executive Officer commented "Spear & Jackson will reach the .16 - .18 cents per fully diluted share despite the malicious comments on our company". Spear & Jackson denies all recent misstatements, mischaracterizations and distortions made in recent publications concerning Spear & Jackson.
>
> The company has consulted with its legal counsel about appropriate action. The company will aggressively pursue remedial action against the writers and publishers involved.

21. On August 6, 2003, over *Business Wire*, the Company issued a press release stating "Spear & Jackson Reports 3rd Quarter Earnings Increase of 272%":

> Spear & Jackson announced today that 3rd quarter net income rose to $1,926 million (.16 cent per fully diluted share) vs $708 thousand for the 3rd quarter of 2002. For the first nine months, earnings rose to $4,581 million (.38 cent per fully diluted share) vs $800 thousand for the third quarter of 2002. This is a 572% increase over the first nine months of 2002.
>
> Net sales increased 7.3% from $24,194 million to $25,956 million in the period ending June 30, 2003 compared to the period ending June 30, 2002.
>
> Net sales for the first nine months increased 10.6% from $68,280 million to $75,507 million compared to the nine months ending June 30, 2002.

22. On August 27, 2003, over *Business Wire*, the Company announced its purchase of shares through concealing the name of the seller who was actually defendant Crowley:

> Spear & Jackson, Inc. reported that it has purchased 270,000 shares from a stockholder. Spear & Jackson is prepared to repurchase its shares in private transactions or in the market in compliance with applicable rules at such times as its stock trades at a price at or below its book value.

23. On January 14, 2004, over *Business Wire*, the Company issued a press release stating "Spear & Jackson Announces Fiscal 2003":

> For the fiscal year 2003, net sales rose from 87.9 million in 2002 to 91.9 million for fiscal 2003. The sales volumes have been diluted in the UK because of management decision to cease trading with a wholesaler called Toolbank. This has given us a higher margin benefit occurring from selling direct to major customers rather than through a wholesaler. This decision has favorably impacted trading results in the quarter ending September 30, 2003.
>
> Costs of Goods Sold as a percentage of sales decreased to 68.5% during the year ending September 30, 2003, compared to 70.5% in the twelve months ending September 30, 2002. Cost of Goods Sold increased to 62.9 million in the year ending September 30, 2003, from 61.9 million in the twelve months to September 30, 2002.
>
> Current year gross profit percentages and their 2002 prior year comparatives are accordingly as follows: year ending September 30, 2003: 31.46%, year ending September 30, 2002: 29.51%.

24. On January 15, 2004, over *Business Wire*, the Company added fuel to the Company's stock by projecting earnings to be well above forecast:

> ***Spear & Jackson indicated today that 2004 earnings are expected to be in the range of 50-55 cents per fully diluted share.***
>
> The corporation will release details regarding its first quarter 2004 results prior to February 15, 2004.

25. On January 16, 2004, over *Business Wire*, the Company issued a press release concerning its repurchase of shares, thus reaffirming the public's confidence in the Company:

> Spear & Jackson, announced that it has received board approval to purchase up to 500,000 shares in the market or in private transaction in compliance with applicable rules at such times.

In fact, the Company was only purchasing shares from Crowley.

26. On February 17, 2004, the Company announced its fiscal 2004 first quarter results as follows:

> Spear & Jackson today announced financial results for the First Quarter ended December 31, 2003.
>
> Net Revenues increased to $22,982 million from $22,182 million in the three months ended December 31, 2003 compared to the three months ended December 31, 2002.
>
> Sales in Australia have decreased in quarter one of Fiscal 2004 because of the beneficial impact last year of significant sales to a customer with whom the company no longer trades. Sales also benefited by favorable exchange movements.
>
> Net Income was $281 thousand or .02 per fully diluted share for the Fiscal 2004 quarter ended December 31, 2003 versus $1,183 million or .10 per fully diluted share for the Fiscal 2003 quarter ended December 31, 2002.
>
> Our Gross Profit Margins were unchanged for both quarters ended December 31, 2003 and 2002 at 31.2%.

27. On April 16, 2004, *Bloomberg* announced the following after the Company's Chairman was charged with fraud by the Commission:

> U.S. securities regulators sued Spear & Jackson Inc. Chief Executive Dennis Crowley, alleging he used false information to boost the British tool-making company's stock price while secretly selling $3 million in shares.
>
> U.S. District Court Judge Donald M. Middlebrooks in West Palm Beach, Florida, appointed a corporate monitor yesterday to oversee the company at the request of the U.S. Securities and Exchange Commission, according to a statement released today by the agency's Miami office.
>
> "This is an instance of a public company's chief executive profiting at the expense of shareholders and trying to hide it offshore," SEC lawyer Ivan Harris said.
>
> Spear & Jackson, based in Sheffield, England, makes premium hand and garden tools that sell worldwide under brand names such as Eclipse, Bowers and Neill Tools. The company also makes precision measurement tools. Its shares trade on the Over-the-Counter Bulletin Board in the U.S.
>
> Crowley, 42, who is also chairman, works out of the company's U.S. office in Boca Raton, Florida. He didn't respond to a call to Spear & Jackson and his residential phone listing in Boca Raton was disconnected. His lawyer couldn't be located for comment.
>
> The SEC alleged in a civil lawsuit that Crowley orchestrated a classic "pump-and-dump" scheme, manipulating Spear & Jackson's share price over the last two years by using false information to tout the stock while at the same time selling shares in secret. Crowley sold the stock through U.S. brokerage accounts, hiding his identity behind front companies in the British Virgin Islands, the SEC said.
>
> U.S. law requires company executives to disclose their transactions in company stock.
>
> Spear & Jackson shares fell 52 cents to $1.85 at 10:25 a.m. today. The shares have declined 88 percent from their high last June 23, when the company announced that its Bowers Metrology division had won a contract with Moog Inc. to supply gauges for critical measurements of military and commercial airlines. Moog is a maker of control systems for aerospace products.

28. The true facts which were known by each of the defendants, but concealed from the investing public during the Class Period, were as follows:

  (a) That Crowley has orchestrated a "pump-and dump" scheme to manipulate the share price of SJCK stock. Starting in 2002, Crowley, along with an Orlando, Florida-based stock

promoter, IMS, and IMS' two principals, Yolanda Velazquez and Kermit Silva, used false information to tout SJCK stock to registered representatives and broker-dealers around the country.

(b)     That Crowley used nominee companies based in the British Virgin Islands illegally to obtain over 1.2 million shares of SJCK stock during 2002, some of which he obtained through the filing of a fraudulent Form S-8 registration statement. The Commission's complaint alleges that during the time that Crowley and IMS promoted SJCK shares, Crowley sold almost 650,000 of these shares, realizing over $3 million in profits. Crowley also transferred some of the illegally-obtained SJCK shares to IMS, which sold them for approximately $1.6 million.

(c)     That the Company's repurchase of shares was not in compliance with applicable rules.

(d)     That the Company never had any intent on making open market purchases as suggested in its January 16, 2004 release.

(e)     That the Company was not on track to achieve earnings of $0.50 to $0.55 per share for 2004.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

29.     Plaintiff incorporates ¶¶1-28 by reference.

30.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

31.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- 11 -

(a)   Employed devices, schemes, and artifices to defraud;

(b)   Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)   Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of SJCK publicly traded securities during the Class Period.

32.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SJCK publicly traded securities. Plaintiff and the Class would not have purchased SJCK publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

33.   As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of SJCK publicly traded securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

34.   Plaintiff incorporates ¶¶1-33 by reference.

35.   The Individual Defendants acted as controlling persons of SJCK within the meaning of §20(a) of the 1934 Act. By reason of their positions as officers and/or directors of SJCK, and their ownership of SJCK stock, the Individual Defendants had the power and authority to cause SJCK to engage in the wrongful conduct complained of herein. SJCK controlled each of the

Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and SJCK are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased SJCK publicly traded securities (the "Class") on the open market during the Class Period. Excluded from the Class are defendants.

37. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. SJCK had more than 11 million shares of stock outstanding, owned by hundreds if not thousands of persons.

38. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)   Whether the 1934 Act was violated by defendants;

(b)   Whether defendants omitted and/or misrepresented material facts;

(c)   Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)   Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)   Whether the prices of SJCK's publicly traded securities were artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

39. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

40. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding plaintiff and the members of the Class damages, interest and costs; and

C. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

- 15 -

## JURY DEMAND

42. Plaintiff demands a trial by jury.

DATED: April 20, 2004

CAULEY, GELLER, BOWMAN
& RUDMAN, LLP

_/s/ Paul J. Geller_____

Paul J. Geller
Florida Bar No. 984795
Jack Reise
Florida Bar No. 058149
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432
(561) 750-3000 (tel)
(561) 750-3364 (fax)

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
William S. Lerach
Darren J. Robbins
401 B Street, Suite 1700
San Diego, CA 92101
(619) 231-1058 (tel)
(619) 231-7423 (fax)

Attorneys for Plaintiff

G:\cgbr\Spear & Jackson, Inc. (S) 24131\Pld\COM.LEE.doc

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

SOON LIM LEE ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 10/20/03 | 3,000 shares | $5.30 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _16_ day of _APRIL_, 2004.

_____
SOON LIM LEE

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

01-80375

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SOON LIM LEE, on behalf of himself and all others similarly situated

**DEFENDANTS** CIV-RYSKAMP
SPEAR & JACKSON, INC., WILLIAM FLETCHER, and DENNIS CROWLEY

MAGISTRATE JUDGE

(b) County of Residence of First Listed Plaintiff  Foreign
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jack Reise
Cauley Geller Bowman & Rudman, LLP
197 South Federal Highway, Suite 200
Boca Raton, Florida 33432
(561) 750-3000

Attorneys (If Known)

Palm Beach  9:04cv80375

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation |  | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | X 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violations of Section 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 (promulgated thereunder 17 C.F.R. §240.10B-5)

## VII. REQUESTED IN COMPLAINT:
X CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Unknown $; inj.
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 4/20/04  SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 530875  AMOUNT 150.00  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    (b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.     Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.