**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Civil Action No. 04-80375-CIV-MIDDLEBROOKS/JOHNSON

IN RE SPEAR & JACKSON
SECURITIES LITIGATION

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF FAYE
MORGENSTERN, TRUSTEE OF MORNINGSTAR TRUST, MARVIN FRIEDMAN,
ALLEN J. SAKS, JUDD MORGENSTEIN, AND WILLIAM L. DENMAN, JR. FOR
APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD
COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS**



## INTRODUCTION

Class members Faye Morgenstern, Trustee of Morningstar Trust, Marvin Friedman, Allen J. Saks, Judd Morgenstern, and William L. Denam, Jr. (the "Morningstar Group"), respectfully submit this memorandum of law in further support of their motion, appointment as lead plaintiffs and approval of their choice of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Schiffrin & Barroway, LLP ("Schiffrin & Barroway") as lead counsel.[1]

## PRELIMINARY STATEMENT

Currently, there are four groups of putative class members in this litigation seeking appointment as lead plaintiffs and approval of their selection of counsel. The four groups and their stated losses are as follows:

|   | Movant | Reported loss |
|---|--------|---------------|
| 1 | First Mirage, Inc., Profit Concepts, Ltd., Generation Capital Associates and American Merchant Press, Inc. (The High Capital Funding Group) | $1,380,431.34 |
| 2 | Faye Morgenstern, Trustee of Morningstar Trust, Marvin Friedman, Allen J. Saks, Judd Morgenstern and William L. Denam, Jr. (The Morningstar Group) | $226,032.72 |
| 3 | J. Claude Wheeler, Jr., Dennis Holland and Daniel Sciro (Spear Jackson Investor Group) | $182,000.00 |
| 4 | Charles J. Rozenas | $178,070.00 |

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the District Court shall appoint as lead plaintiff the person or group of persons with the largest

---

[1]    In accordance with the Court's Order (DE # 31) counsel for the Morningstar Group made a good faith effort to arrive at a mutually acceptable selection of Lead Plaintiff(s) and Lead Counsel, however, Movants were unable to reach an agreement.

financial interest in the litigation. 15 U.S.C. §78u-4(a)(3)(B). The financial interest is measured by the amount of losses suffered by the plaintiff(s) seeking the appointment, and <u>such losses must be properly documented</u> to enable the court to reach its determination. Of the four groups seeking appointment here, the Morningstar Group is the most adequate to represent the interests of the proposed class. Unlike the High Capital Funding Group ("HCFG"), which claims to have the largest loss, the Morningstar Group has properly documented its loss, has not engaged in securities fraud, and has demonstrated itself to be the most representative group to serve the interests of the proposed class.

Though absent from its papers, HCFG's Frank E. Hart[2] and Generation Capital Associates ("GCA") were involved in a securities fraud scheme in 1994 that resulted in their consent to a court order disgorging them of $620,817 in profits obtained in violation of Section 10(b) of the Securities Exchange Act of 1934 – the very section that this action is predicated on.

Furthermore, the documents attached as Exhibit B to the Declaration of Kenneth J. Vianale, and offered by HCFG in support of their motion for appointment as lead plaintiff, are materially false and misleading. Of the 660 trades listed, 140, or 21%, list buy or sell prices that are significantly outside the trading range on the date indicated. Applying a conservative remedy utilizing the closest price within the daily range, HCFG's alleged loss has been overstated by a minimum of $825,835.57, or 250%, of their actual losses of $554,596.[3] For example, HCFG's

---

[2]     Frank E. Hart is a director of Reconditioned Systems, Inc. and in their proxy dated August 8, 2003, the following biographical information on Mr. Hart was provided: Mr. Hart has been a Director since August 2000 and has been President of Profit Concepts, Ltd. since 1978. Profit Concepts, Ltd. has been the Manager of a private investment fund, High Capital Funding, LLC and its predecessor, since 1983. Prior to 1983, Profit Concepts, Ltd. was in the business of rendering management and financial consulting services.

[3]     Depending on whether the reported price was above or below that day's range, Movants have substituted the closest price, either the high or low of that day, in place of the reported price.

First Mirage claims to have purchased 4,669 shares on June 5, 2003 at $11.0188 and on that same day sold 17,500 shares at $3.3134 – SJCK stock traded between $10.1500 and $11.2300 on June 5, 2003. This transaction alone represents an overstatement by HCFG of at least $119,640, and could be as much as $138,540. With 140 trades occurring outside the trading range, serious questions exist regarding HCFG's purported ability to adequately represent the class. At a minimum, the substantial nature of their overstatements warrants discovery to verify if the other trades occurred as sworn.

As a result of HCFG's involvement in securities fraud and its misleading and inaccurate loss charts, HCFG is unsuitable to serve as lead plaintiff for the proposed class. Since the Morningstar group has the largest loss of the remaining Movants, satisfies the requirements of Rule 23, and is otherwise suitable to represent the class, the Morningstar Group should be appointed lead plaintiff.

## I.   HIGH CAPITAL FUNDING GROUP'S HISTORY RAISES QUESTIONS ABOUT ITS ADEQUACY

There are substantial questions as to HCFG's character and ability to represent the interests of the Class. The Court is entirely within its province to determine whether HCFG would be an adequate and typical class representative and should cause HCFG to show that its members would present no problems for the class. 15 U.S.C. §78u-4(a)(3)(B)(iii). Counsel have an affirmative duty to disclose such facts to the Court. *See Hartsell v. Source Media*, No. 98-CV-1980-M, 2003 U.S. Dist. LEXIS 5250 (N.D. Tex. March 31, 2003). In *Hartsell*, the court struck as inadequate and atypical a lead plaintiff who had been convicted of conspiracy to commit mail fraud. Although counsel learned of the conviction <u>after</u> he had been appointed lead plaintiff, the court noted that counsel had a duty "to advise the Court that facts questioning the

adequacy and typicality of a class representative ... have come to counsel's attention."[4]  *Id.* at

*9. Additionally, the court stated that counsel's "fiduciary duty to the class as a whole should

compel recognition of a serious problem for the class, when a class representative, whose duties

obviously require acting on behalf of absent persons, is convicted of a felony involving fraud."

*Id.* at *8. Moreover, counsel's duty of candor enables the court to carry out its "special

responsibilities to act as a 'guardian of absentee interests.'" *Id.* at 10 (citing *Mendoza v. United

States*, 623 F.2d 1338, 1346 (9th Cir. 1980)).

Here, as required under *Hartsell*, counsel are discharging their duty of candor to the

Court by advising it of facts that may affect the adequacy and typicality of HCFG.  Crimes

involving dishonesty render a proposed lead plaintiff inadequate to serve in a position of trust

and confidence such as lead plaintiff.  *See e.g., In re Network Assoc., Inc. Sec. Litig.*, 76 F. Supp.

2d 1017 (N.D. Cal. 1999) (charges of tax evasion, money laundering, conspiracy and consorting

with criminal elements warrant denial of appointment as lead plaintiff).

**A.      The SEC Found HCFG's Hart and GCA in violation of Section 10(b) of the
           Exchange Act**

As the HCFG points out in its motion, First Mirage Inc., Profit Centers, Ltd., Generation

Capital Associates ("GCA") and American Merchant Press Inc, are all subsidiaries of High

Capital Funding LLC.[5]  High Capital Funding LLC is controlled by Frank E. Hart.  In 1994, Hart

and hedge fund GCA were forced by the SEC to disgorge themselves of over $600,000 in profits

obtained in violation of Section 10(b) of the Exchange Act.  The Seventh Circuit Court of

Appeals affirmed the finding that Steven Jakubowski, their co-conspirator, violated Section

---

[4]      The court found, however, that counsel did not act in bad faith and refused to impose any sanctions. 2003 U.S. LEXIS 5250, at *12.

[5]      Motion of High Capital Funding Group for Appointment as Lead Plaintiffs and Approval of Lead and Liaison Counsel and Incorporated Memorandum of Law at 2.

10(b) as well. *SEC v. Jakubowski*, 150 F.3d 675 (7th Cir. 1998). What is even more unsettling than the securities fraud itself, was the intentional disregard for federal law Frank Hart exhibited as he directed depositors, in violation of Section 10(b), to sell their GCA stock at a preferred private price, so his firm GCA could reap substantial profits selling it on the open market.

"In May of 1991 Hart contacted Jakubowski and told him that he wanted to find someone eligible to buy shares" of a bank that was converting from a mutual to a capital stock association. *SEC v. Jakubowski,* 1997 U.S. Dist. LEXIS 4000, *2. Jakubowski then obtained depositors who had the right to obtain stock at the pre-public offering price, and arranged for the illegal transfer of those shares to Hart and GCA. *Id.* at *4. This allowed GCA to then sell the shares to the market at a substantial profit. In each instance, Hart and GCA had depositors execute stock request forms, in clear violation of the language on the form and federal law,[6] with the intention of immediately transferring the stock to GCA. Although the forms expressly prohibited the acquisition of a depositor's subscription rights by a third party, Hart and GCA induced less sophisticated investors into transferring their interests to GCA in exchange for as much as 10 percent and as little as 3.25 percent of the eventual profit.

At least two depositors withdrew from the scheme when they learned from their bank that the transfer of subscription rights was forbidden. *SEC v. Jakubowski*, 150 F.3d at 680. How did Hart and GCA respond to this? They increased the purchases made in the names of other depositors that the bank did not suspect of selling their subscription rights. *Id.* at 681.

Jakubowski, Hart and GCA engaged in 12 similar transactions of this nature, and before getting caught, tried to hide their activities by creating fictitious loan documents. In one such instance, Jakubowski prepared papers purporting to show that "GCA was loaning money to the

---

[6]      *See* 12 C.F.R. §563b.3(i).

depositors so that they could purchase the shares for their own accounts.  The documents were fictions, no money was loaned; the depositors never received the shares and took no risk of loss." *SEC v. Jakubowski*, 150 F.3d at 681.  "Adding icing to the cake," the Seventh Circuit Court of Appeals concluded, "Jakubowski backdated some of these documents so that it would appear that the 'loans' preceded the banks' inquiries." *SEC v. Jakubowski*, 150 F.3d at 682.

Given the nature of the activities engaged in by Hart and GCA, the commonality of Hart's management over all of HCFG's subsidiaries, it is entirely inappropriate for HCFG to serve as lead of a class of investors that were the victims of securities fraud.  As Judge Ryskamp found in *Newman, et al. v. Eagle Building Technologies, et al.*, 209 F.R.D. 499, (S.D. Fla. 2002), an individual that has been found by the SEC to have violated certain securities laws is inadequate to serve as lead plaintiff. *Id.* at 504.  *See also Hall v. Nat'l Recovery Sys. Inc.*, 1996 U.S. Dist. LEXIS 11992, 1996 WL 467512, at *5-6 (M.D. Fla. Aug. 9, 1996) (pattern of prior misconduct by proposed class representative raised concerns about reliability and conscientiousness, justifying denial of class certification); *In re Network Assoc.*, 76 F. Supp. 2d at 1029 (fraud investigation of proposed lead plaintiff was a 'major negative' to entity's appointment as lead plaintiff, holding the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence).

Although Judge Ryskamp did not exclude the other members of the lead plaintiff group in which the securities violator moved, the facts are easily distinguished from those here.  In *Newman v. Eagle Building Technologies*, the violator did not have control over the other Movants like Hart does in this case. *Newman v. Eagle Building Technologies*, 209 F.R.D. at 504.  Here, Hart is a controlling person of each of the Movants in the HCFG, so the "cloud" upon his moral character also clouds each of the Movants in HCFG.  Therefore, HCFG should be excluded in its entirety from consideration as lead plaintiff.

## II.   THE MORNINGSTAR GROUP HAS THE LARGEST, VERIFIABLE FINANCIAL INTEREST IN THE LITIGATION

Prospective lead plaintiffs must file a certificate where, among other things, they "identify any transactions in the securities covered by the class period...." Senate Report No. 104-98, at 689.  They must also provide any information that would enable the district court to evaluate the adequacy of those plaintiffs against competitors under the PSLRA. *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1320 (N.D. Ala. 2000); *see also* 15 U.S.C. § 78u-4(a)(2)(A). Failure to provide a complete and accurate certification is a deficiency that renders certification unacceptable to support a lead plaintiff application. *See Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410 (D. Minn. 1998).

Here, although the HCFG claims to have sustained losses totaling $1,380,431.34, its certification and loss chart are inconsistent and evidently inaccurate.  The magnitude of HCFG's overstatement of its losses is staggering:

| | | | |
|---|---|---|---|
| Profit Concepts | $10,221 | $2062 | **495%** |
| GCA | $226,752 | $32,118 | **706%** |
| First Mirage | $995,497 | $372,456 | **267%** |

Furthermore, the shear number of trades contained in the loss charts certified by HCFG's general counsel, David Rapaport, which occurred outside the indicated day's trading range is beyond explanation.  Over 21% of the certified trades could not have occurred at the prices indicated.  With overstatements of 706%, 495% and 267% the entire application of HCFG should be rejected as unreliable. *See Nager v. Websecure, Inc.* 1997 U.S. Dist. LEXIS 19601, at * 3 (D. Mass. 1997) (where a movant reported one transaction outside the trading range for a

particular day, "[t]he inaccuracy in the [movant's] affidavit may be explainable, but it casts sufficient doubt on [the movant's] adequacy as a representative plaintiff that he should be excluded" from serving as lead plaintiff.); *In re Microstrategy Inc. Secs. Litig.*, 110 F. Supp 2d 427, 437 (E.D. Va. 2000) (court rejected plaintiff that filed "conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavit's conclusion"); *In re Safeguard Scientifics Sec. Litig.*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (noting "serious concerns with credibility" that originate from submitting faulty trading data).

Given such discrepancies, the Court lacks sufficient information to determine whether the HCFG has, in fact, the largest financial interest in the litigation, and at minimum, HCFC should be required to submit to limited discovery, including production of its SJCK trade confirmations. 15 U.S.C. §78u-4(a)(3)(B)(iv) (discovery permitted into the adequacy of a proposed lead plaintiff upon the showing of a reasonable basis for finding that the plaintiff is incapable of adequately representing the class); *see also In re Cephalon Securities Litigation*, 1996 U.S. Dist. LEXIS 10546 (E.D. Pa. 1996) (court granted plaintiff's motion to take discovery of another plaintiff that was claiming to be the most adequate plaintiff when significant issues were raised as to adequacy).

By contrast, the Morningstar Group is demonstrably the only group of proposed lead plaintiffs who meet the PSLRA requirements for appointment as lead plaintiff. Its losses of $226,032.72 are squarely supported by the certifications and loss chart previously submitted to the Court. (*See* Saxena Decl. at Exs. B & C.) Comparatively, the Spear & Jackson Investor Group's and Charles Rozenas' stated losses of $182,000 and $178,070 respectively, are, by the Groups' own certifications, lower than the losses shown by the Morningstar Group, and do not rise to the level of presumptive adequacy. Therefore, the Morningstar Group is the most adequate group of proposed lead plaintiffs and its motion should be granted.

Civil Action No. 04-80375-CIV-MIDDLEBROOKS/JOHNSON

**A.   As A Net Seller, GCA Is Unfit To Serve As Lead Plaintiff**

In addition to these infirmities, GCA is a net-seller which means it sold more shares during the class period than it purchased.  This occurred because it was selling shares during the class period that it owned before the class period began.  For example, as of April 23, 2003, GCA had a negative share balance of 77,491 shares.  As a net seller, GCA is disqualified outright from consideration as lead plaintiff.  *See In re Comdisco Secs. Litig.*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (net seller is "totally out of the running for designation as lead plaintiff"); *In re Comdisco Secs. Litig.*, 2004 U.S. Dist. LEXIS 7230, at *7 (N.D. Ill. Apr. 26, 2004) (court reaffirmed prior ruling that only class period transactions should be considered in determining largest financial interest and therefore a net seller could not be considered an adequate lead plaintiff); *In re Cable and Wireless, PLC*, 217 F.R.D. 372, 378 (E.D. Va. 2003) (court rejected lead plaintiff application from institutional net seller); *In re Goodyear Tire and Rubber Co. Sec. Litig.*, No. 5:03CV2166 (N.D. Ohio Mar 12, 2004) (same) (attached hereto as Exhibit A).

**III.   CONCLUSION**

For the reasons stated above, the Morningstar Group respectfully requests appointment as lead plaintiff and the approval of its selection of lead counsel.

Dated: July 9, 2004

                              MILBERG WEISS BERSHAD
                              & SCHULMAN LLP

                              By: _____
                                   Maya Saxena
                                   Fla. Bar No. 0095494
                                   msaxena@milbergweiss.com
                                   Joseph E. White, III
                                   Fla. Bar No. 0621064
                                   jwhite@milbergweiss.com
                                   5355 Town Center Road, Suite 900
                                   Boca Raton, FL 33486
                                   Telephone:  (561) 361-5000
                                   Facsimile:  (561) 367-8400

Civil Action No. 04-80375-CIV-MIDDLEBROOKS/JOHNSON

-and-

**SCHIFFRIN & BARROWAY, LLP**
Stuart L. Berman
Darren Check
Sean M. Handler
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

**Proposed Lead Counsel**

Civil Action No. 04-80375-CIV-MIDDLEBROOKS/JOHNSON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail, postage prepaid, this 9th day of July, 2004, to all counsel listed on attached service list.

_____
Joseph E. White, III

Civil Action No. 04-80375-CIV-MIDDLEBROOKS/JOHNSON

## Service List

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Maya Saxena
5355 Town Center Road, Suite 900
Boca Raton, FL 33486
Tel: (561) 361-5000
Fax: (561) 367-8400

**SCHIFFRIN & BARROWAY**
Andrew Barroway
Stuart L. Berman
Darren Check
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Tel: (610) 667-7706
Fax: (601) 667-7056

**GELLER RUDMAN PLLC**
Paul J. Geller
Jack Reise
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432
Tel: (561) 750-3000
Fax: (561) 750-3364

**VIANALE & VIANALE LLP**
Kenneth J. Vianale
5355 Town Center Road, Suite 801
Boca Raton, FL 33486
Tel: (561) 391-4900
Fax: (561) 368-9274

**BERMAN DeVALERIO PEASE
TABACCO BURT & PUCILLO**
Michael J. Pucillo
Northbridge Centre
515 N. Flagler Drive, Suite 1701
West Palm Beach, FL 33401
Tel: (561) 835-9400
Fax: (561) 835-0322

**MAGER WHITE & GOLDSTEIN**
Jayne Arnold Goldstein
2825 University Drive, Suite 350
Coral Springs, FL 33065
Tel: (954) 341-0844
Fax: (954) 341-0855

**LERACH COUGHLIN STOIA &
ROBBINS**
William S. Lerach
Darren Robbins
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423

**JAMES B. DENMAN, P.A.**
James Burton Denman, III
2400 E. Commercial Boulevard, Suite 208
Fort Lauderdale, FL 33308-4030
Tel: (954) 938-9777
Fax: (954) 938-9789

**SCOTT & SCOTT, LLC**
David R. Scott
Neil Rothstein
Erin Green-Comite
108 Norwich Street
Colchester, CT 06415
Tel: (860) 532-5537
Fax: (860) 537-442

**SCOTT & SCOTT, LLC**
Edmund W. Searby
Walter W. Noss
33 River Street
Chagrin Falls, OH 44022
Tel: (440) 247-8200
Fax: (440) 247-8275

**SCOTT & SCOTT, LLC**
Arthur Shingler
401 B Street, Suite 307
San Diego, CA 32101
Tel: (619) 233-4565
Fax: (619) 233 0508

Civil Action No. 04-80375-CIV-MIDDLEBROOKS/JOHNSON

**JOHN CHAPMAN LIMITED**
John Chapman
700 W. Saint Clair Avenue, Suite 300
Cleveland, OH 44113
Tel: (216) 241-8172
Fax: (216) 241-8175

**ZIMMERMAN, LEVI & KORSINSKY LLP**
Eduard Korsinsky
39 Broadway, Suite 1440
New York, NY 10006
Tel. (212) 363-7500
Fax. (212) 363-7171

**WECHSLER HARWOOD LLP**
Robert I. Harwood
488 Madison Avenue, 8th Floor
New York, NY  10022
Tel: (212) 935-7400
Fax: (212) 753-3630

**LASKY & RIFKIND, LTD.**
Leigh R. Lasky
100 Park Avenue
New York, NY  10017
Tel: (212) 907-0800
Fax: (212) 684-6083

**BRODSKY & SMITH, LLC**
Evan Smith
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Tel: (610) 667-6200
Fax: (610) 667-9029

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
401 E. Pratt Street, Suite 2525
Baltimore, MD 21203
Tel: (410) 332-0030
Fax: (410) 685-1300

**WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ LLP**
Fred T. Isquith
270 Madison Avenue, 11th Floor
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4653

**Counsel for Defendants:**

**ALLAN M. LERNER, P.A.**
Allan Michael Lerner
2888 E. Oakland Park Boulevard
Fort Lauderdale, FL  33306
Tel: (954) 563-8111
Fax: (954) 563-8522

**WICKER SMITH TUTAN O'HARA McCOY GRAHAM & FORD**
Robert Chanderline Bauroth
515 E. Las Olas Boulevard, Sutie 1400
SunTrust Bank
Fort Lauderdale, FL  33301
Tel: (954) 467-6405
Fax: (954) 760-9353

**LEE & AMTZIS, P.L.**
Eric Lee
5550 Glades Road, Suite 401
Boca Raton, FL  33431
Tel: (561) 981-9988
Fax: (561) 981-9980

# EXHIBIT A

ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: THE GOODYEAR TIRE & | ) | |
| RUBBER COMPANY | ) | CASE NO. 5:03CV2166 |
| SECURITIES LITIGATION | ) | |
| | ) | Judge John R. Adams |
| | ) | |
| | ) | MEMORANDUM OPINION & ORDER |
| | ) | [Resolving Docs. 13, 16, 17 in case |
| | ) | #5:03CV2166 and Doc. 12 in case |
| | ) | #5:03CV2210] |
| | ) | |

## I. Introduction

The above-captioned case is an action for securities fraud brought on behalf of shareholders of

The Goodyear Tire & Rubber Company (the "Shareholders") against Defendants The Goodyear Tire

& Rubber Company (Goodyear), Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie

W. Bergeron, John W. Richardson, and Richard J. Kramer, (collectively referred to as "Defendants").

The Shareholders base their claims on violations of Section 10(b) of the Securities and Exchange Act of

1934, Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5, which was promulgated

thereunder. The action was filed as a class action, excluding from the class Defendants, directors and

officers of Goodyear, their families and affiliates.

On December 31, 2003, this Court entered an order consolidating all individual actions related

to this matter. Shortly thereafter certain individual movants filed motions requesting appointment as lead

plaintiff in the consolidated action. The first group of movants consists of the Alaska Electrical Pension

Fund and the Central States, Southeast and Southwest Areas Pension Fund (the "Institutional Funds").[1] The second group of movants consist of funds A57, C16 and NK1, which are part of the fund family managed by Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH, a fund management company located in Vienna, Austria (Capital Invest).[2] The last movant is Flamina Holdings, AG (Flamina Holdings.).[3] Flamina Holdings is a holding entity for two individual investors, Mr. Michael May and Ms. Christina May.

On February 10, 2004, the Court held a hearing at which time counsel for each of the proposed lead plaintiffs had an opportunity to present their arguments. Counsel for the Institutional Funds, Capital Invest and Flamina were present at the hearing.[4] The Court has reviewed the parties' motions, responses, and replies thereto. It has also fully considered the arguments presented at the hearing.

## II. The Alleged Losses

The Institutional Funds request appointment as lead plaintiff based on their alleged loss of more than $3.7 million in connection with the purchase of over 188,000 shares of Goodyear securities between the time of October 13, 1998 and October 22, 2003 (the "Class Period"). The Institutional

---

[1] ECF Doc. 16.

[2] ECF Doc. 17.

[3] Flamina's motion was filed as ECF Doc. 12 in case 5:03CV2210.

[4] The Court notes that a motion filed by movant Richard Berman is still pending on its docket. Mr. Berman was not represented by counsel at the hearing. Therefore, the Court deems his motion withdrawn. Even if the Court seriously considered Mr. Berman's motion, however, it would not appoint him as lead plaintiff in this action. By Mr. Berman's own admission, he has lost only $54,730, which is much less than the losses the other movants allegedly suffered. (Berman, Mot. for Lead Plf. at 9).

2

Funds also request approval of their selection of lead counsel, William S. Lerach and Tor Gronborg of Milberg, Weiss, Bershad, Hynes & Lerach, LLP and Landskroner-Grieco, Ltd. as liaison counsel.

Likewise, Capital Invest requests appointment as lead plaintiff based on its loss of approximately $1.2 million in connection with its acquisition of 83,100 shares of Goodyear common stock during the class period. Capital Invest also requests approval of its selection of lead counsel the law firm of Bernstein, Litowitz, Berger & Grossman, LLP (Bernstein Litowitz) and the law firm Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA (Climaco Lefkowitz) as liaison counsel.

Flamina Holdings requests appointment as lead plaintiff based on its alleged loss of $2 million in connection with its acquisition of common stock and options. Flamina Holdings also requests approval of its selection of lead counsel the law firm of Scott & Scott and the law firm Tzangas, Plakas, Mannos, & Recupero as liaison counsel. However, Flamina Holdings' stated losses are based on its losses plus the losses of Goodyear Tireworkers Independent Unity of the USWA Local 307 Topeka (GTWIU), who no longer seeks appointment as lead plaintiff. GTWIU was originally a co-movant with Flamina Holdings. However, it subsequently withdrew from the motion.[5] At the hearing on this matter, Flamina Holdings represented that its loss alone was only $885,000.

### III.  Capital Invest is Appointed as Lead Plaintiff

The Private Securities Litigation Reform Act (PSLRA) sets forth the procedure that governs appointment of the lead plaintiff in actions arising under the Securities and Exchange Act of 1934 when such an action is brought as a class action under the Federal Rules of Civil Procedure. See

---

[5]  ECF Doc. 32, filed in case 5:03CV2166.

generally 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).  This procedure first requires that the plaintiff who files the initial action, within 20 days of filing, publish a notice to the class informing the class members of their right to file a motion for appointment as lead plaintiff.  Id. at § 78u-4(a)(3)(A)(I).[6]

The PSLRA also provides that within 90 days after publication of notice, the district court shall consider the class members' motions and shall appoint as lead plaintiff the member or members of the class that the Court determines most capable of adequately representing the interests of the class members.[7]  Id. at § 78u-4(3)(B)(I).  When making the determination of "most adequate plaintiff," the PSLRA states that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the PSLRA] is the person or group of persons that -
>
> (aa) has either filed the complaint or made a motion in response to a notice. . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. § 78u-4 (3)(B)(iii)(I)(aa)-(cc).  The above presumption may only be rebutted by proof that the

---

[6] Here, the first notice of pendency was published over The Business Wire on October 23, 2003. Consistent with the PSLRA, the notice advised potential class members of the pendency of the action, the claims asserted therein, the purported class period, and that any member may, within 60 days from the date of the notice, move the Court to serve as lead plaintiff in the action. Id. at § 78u-4(a)(3)(A)(I).

[7] The Court acknowledges that this Order designating lead Plaintiff was not issued within 90 days after publication of notice. However, the Court was not able to comply with the 90-day provision in this case. Based on the Court's trial schedule it was not able to hold the hearing before expiration of the 90-day period. Accordingly, the Court did not have the requisite information on which to base its decision. In re PRI Automation, Inc. Securities Litigation, 145 F.Supp.2d 138, 144-45 (D.Mass. 2001) (noting that compliance with the 90-day provision in some cases would require a district judge to make an uninformed decision and finding the 90-day provision to be an unconstitutional intrusion on judicial functions). Moreover, the Court needed time after the hearing to appropriately consider the parties' motions and focus on selecting the lead plaintiff and lead counsel best suited to adequately and fairly represent the interests of the plaintiff class in this case. See id.

presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing to the class. Id. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. Id. § 78u-4(a)(3)(B)(v).

Here, all movants have timely filed their motions to be appointed lead plaintiff in this action. Accordingly, the Court now turns to its determination of the movants' relative financial interests in the relief sought by the class.

### IV.  Largest Financial Interest

The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." See id. 78(u)(a)(3)(B)(iii)(I)(bb). This Court will calculate financial interest employing a four-factor inquiry recognized by a host of other district courts. See, e.g., In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); In re Nice Sec. Litig., 188 F.R.D. 206, 217 (D.N.J. 1999); In re Cable & Wireless, PLC, Sec. Litig., 217 F.R.D. 372, 375 n. 4 (E.D. Va. 2003); In re Comedisco Sec. Litig., 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001). The four factors relevant to the calculation are: (1) the number of stock shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period. The Court separately addresses each movant's financial interest in light of these factors, subject to the caveat that this discussion is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages.

5

## A. Flamina Holdings

Under the foregoing analysis, Flamina Holdings has not demonstrated the most significant financial interest in this litigation. Flamina Holdings purchased and sold 65,000 shares of Goodyear stock during the Class Period, for a net purchase of zero shares. The company expended $1,550,000 and received $665,400, incurring a total loss of $884,600. The record thus indicates that, of the three movants for lead plaintiff, Flamina Holdings expended the least amount of funds and purchased the fewest (total) shares of Goodyear stock during the Class Period. As the Court discusses below, Flamina Holdings' $884,600 loss is not the greatest loss incurred by the movants. Accordingly, Flamina Holdings is not the best candidate for lead plaintiff.

Flamina Holdings' motion is denied on the additional ground that the movant is a holding company for two individual investors and thus is not an "institutional investor." The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role. See In re Telxon Corp. Sec. Litig., 67 F.Supp. 2d 803, 821 (N.D. Ohio 1999).

Flamina Holdings' alternative request for appointment as a co-lead plaintiff also is denied. A co-lead plaintiff appointment is not warranted under the circumstances present in this case and likely would result in increased costs and duplication of efforts.

## B. The Institutional Funds

The Institutional Funds' motion also is denied on the ground that the Institutional Funds do not have the most significant financial interest in this litigation based on damages incurred from purchases and sales of Goodyear securities during the Class Period. Although the movants' respective representations of loss seem to indicate that the Institutional Funds suffered the greatest damages by a

considerable margin, the Institutional Funds' claimed $3.7 million loss is illusory.

The Institutional Funds have calculated their purported $3.7 million loss based solely on a first-in-first-out (FIFO) methodology, ignoring the four-pronged inquiry set forth above. In this situation, FIFO grossly inflates the Institutional Funds' damages because the Institutional Funds are a "net seller" of Goodyear stock. The Institutional Funds sold 202,714 more Goodyear shares during the Class Period than they purchased, and received more profits from the sale of Goodyear stock during the Class Period than losses on the purchase of Goodyear securities.

Application of the four-factor test reveals FIFO's inaccuracy under the circumstances present here. The Institutional Funds purchased 188,675 shares of Goodyear stock during the Class Period and sold 391,389 shares for a net sale of 202,714 shares. A determination of net expenditures, or total monies received from sales ($12,910,959.72) of Goodyear stock less total funds expended on purchases ($5,299,423.81), verifies that the Institutional Funds received a total of $7,611,535.91 in net proceeds as a result of their high-volume Goodyear stock sales during the Class Period. The Institutional Funds may have benefitted from the alleged fraud in view of the fact that they earned millions of dollars on net sales of Goodyear stock during the Class Period. Accordingly, the Institutional Funds cannot establish the largest financial interest in the relief sought by the class.

Similarly, Central States and Alaska both are net sellers. Central States profited in the amount of $8,460,217.87 from its sales of Goodyear Stock during the Class Period. Although Alaska expended $848,681.96 more than it received, its loss is not even half as great as that claimed by Capital Invest. As such, the Court rejects the Institutional Funds' contention that they have incurred a greater financial interest in this litigation than any other lead plaintiff applicant. See Weisz v. Calpine

Corp., No. C 02-1200 SBA, Slip. Op. At 12 (N.D. Cal. Aug. 19, 2002) (rejecting motion of lead plaintiff movant who was a net seller and, as a result, "may have actually profited, not suffered losses as a result of the allegedly artificially inflated stock price"); Comdisco, 150 F. Supp. at 945-46 (same). See also In re McKesson HBOC Sec. Litig., 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) ("[a] net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed.")

Even if the Court ignores the flaws inherent in the Institutional Funds' FIFO methodology, the Institutional Funds are not an acceptable lead plaintiff as they may be subject to unique defenses. Alaska sold all of its shares of Goodyear stock prior to the disclosure of the alleged fraud. Likewise, it appears that Central States sold the significant majority of its shares prior to the disclosure. Thus, both Alaska and Central States undoubtedly will face motions to dismiss and/or for judgment as a matter of law on the ground that certain losses suffered by them were not caused by the alleged fraud. See In re Cable & Wireless, 217 F.R.D. at 379 (stating that the lead plaintiff movant who sold its shares "before the fraud . . . was revealed to the public . . . could not have suffered any loss as result of the Defendants' alleged fraud"); In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 437 n. 23 (E.D. Va. 2000) (holding that a lead plaintiff movant who sold shares in the subject company prior to the disclosure of the fraud also may be subject to "unique defenses based on the timing of its loss"); Arduini/Mesina P'ship v. Nat'l Med. Fin. Servs. Corp., 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999) (granting the defendants' motion to dismiss the plaintiff's claims where plaintiff sold all of his shares in the subject company prior to disclosure of the fraud and could not demonstrate that his damages were

8

caused by the defendants' fraudulent statements).

Moreover, the Institutional Funds' motion is denied in light of this Court's previous ruling that lead plaintiff movants must have a pre-existing relationship and basis for acting as a collective unit to qualify under the PSLRA as a viable lead plaintiff group. In re Telxon, 67 F. Supp. 2d at 823 (O'Malley, J.). At the February 10, 2004 hearing, counsel for the Institutional Funds admitted that Central States and Alaska have no relationship pre-dating this litigation and were joined solely for the purpose of prosecuting this case. As such, the Institutional Funds have improperly aggregated their losses for the purpose of their lead plaintiff motion.

### C. Capital Invest

Having denied the competing lead plaintiff applications, the Court now turns to Capital Invest's motion. Capital Invest has the most significant financial interest in this litigation. It purchased the most shares of Goodyear Stock during the Class Period and sold no shares, for a net purchase of 83,100 shares, a net expenditure of $1,779,900.36, and a claimed loss of approximately $1,200,000. Thus, Capital Invest is the presumptive lead plaintiff subject to the requirements of Rule 23 (discussed infra.)

Capital Invest's qualifications for lead plaintiff status are not susceptible to the Institutional Funds' challenges. The Court briefly examines said challenges below.

Contrary to the Institutional Funds' contention, Capital Invest possesses standing to assert securities fraud claims on behalf of the clients for whom it purchases and sells securities. A number of district courts have held that an investment manager has standing to bring securities claims on its clients' behalf if it is the clients' attorney-in-fact and has specific authority to recover its clients' investment

9

losses. See, e.g., Weingberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (stating that "when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name"); In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 299 (D. Del. 2003) (same); In re Rent-Way Sec. Litig., 218 F.R.D. 101, 106-09 (W.D. Pa. 2003) (same); EZRA Charitable Trust v. Rent-Way, Inc., 136 F. Supp. 2d 435 (W.D. Pa. 2001) (same). Capital Invest's Declaration provides, "Capital Invest controls and manages the Funds and acts as attorney-in-fact for them. Capital Invest has full and complete authority to purchase and sell securities for each of the funds, and to institute legal action on their behalf." Based on the Declaration, the other evidence of record, and the caselaw cited above, Capital Invest has standing to bring suit and serve as lead plaintiff in this litigation.

The Institutional Funds' attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm, and therefore an uncommitted and uncontrollable candidate for lead plaintiff, is insupportable. Capital Invest has testified in its Declaration and through its attorneys at the February 10, 2004 hearing that it has vast resources, that it is committed to working to obtain the best possible recovery for the plaintiff class, and that its representatives will be available in person to the Court. Further, the Institutional Funds' comment that Capital Invest is located almost 4500 miles from the Court lacks a measure of ingenuousness given that Alaska itself is located over 4000 miles away and has not provided the Court with any proof that it is willing to make its representatives available to the Court as necessary. Further, Austrians are, by treaty, expressly entitled to the same rights and privileges before United States courts as United States citizens. See Treaty between the United States

10

of America and Austria of Friendship, Commerce and Consular Rights, June 19, 1928, U.S.-Aus., art. IX, 47 Stat. 1876, 1931 WL 29977 (U.S. Treaty). Even in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy.

For all of the foregoing reasons, Capital Invest has the greatest financial interest in this case and is the presumptive lead plaintiff subject to the strictures and requirements of Rule 23. The Court now turns to its Rule 23 analysis.

## V. Adequacy & Typicality Under Rule 23(a)

Having determined that Capital Invest is the largest stakeholder does not end this Court's analysis. The PSLRA requires that the lead plaintiff also satisfy the requirements of Federal Rule 23.[8] Here, the Court must find that Capital Invest would satisfy Rule 23's typicality and adequacy requirements before it can appoint Capital Invest as lead plaintiff.[9] See In re Century Business Services Sec. Litig., 202 F.R.D. 532, 539 (N.D. Ohio 2001) (analyzing the typicality and adequacy

---

[8] Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

[9] Upon motion to certify this action as a class action, the Court will undertake the "rigorous analysis" necessary for a determination of whether the complete prerequisites of Rule 23 are met. In re American Medical Systems, Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) (citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). As the Sixth Circuit has noted, "[a] class is not maintainable as a class action by virtue of its designation as such in the pleadings." Id. Because, in this case, a consolidated complaint has not been filed, the Court will reserve the issue of whether a class will be certified for a later date.

11

requirements of Rule 23 in a securities class action governed by the PSLRA); See also In re Telxon, 67

F.Supp.2d at 807 n.10 (noting that class action analysis under Rule 23 in securities actions hinges on

the typicality and adequacy requirements of the rule). Based on the evidence before it, this Court finds

that Capital Invest would satisfy the typicality and adequacy requirements of Rule 23.

Typicality is governed by Rule 23(a)(3), which requires that the claims or defenses of the

representative party be typical to the claims or defenses of the class. FED. R. CIV. P. 23(a)(3). In

other words, a sufficient relationship must exist between the injury to the named representative and the

conduct affecting the class. In re American Medical Sys. Inc., 75 F.3d 1069, 1082 (6th Cir. 1996)

(quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed.

1992)). "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of

conduct that gives rise to the claims of other class members, and if his or her claims are based on the

same legal theory." Id.

Capital Invest satisfies the typicality requirement. It seeks to represent a class of purchasers of

Goodyear securities who have non-competing and non-conflicting interests. All class members

purchased or acquired Goodyear stock during the Class Period and allegedly suffered a loss as the

result of Defendants' conduct in connection therewith. As Capital Invest aptly notes, its claims deal

with the same issues that pertain to the claims of the other class members. Namely, these issues are (1)

whether Goodyear issued false and misleading statements during the Class period, (2) whether

Defendants acted knowingly and/or with deliberate recklessness in issuing these allegedly false and

misleading statements, (3) whether the market price of Goodyear stock was artificially inflated during

the Class Period because of Defendants' allegedly wrongful conduct, and (4) whether the members of

12

the class have sustained damages, and the amount of such damages. Because Capital Invest's claims deal with the same issues that pertain to the other class members, its interests are clearly aligned with those of the class. Id.

Adequacy is governed by Rule 23(a)(4), which allows certification of a class only if the class representative will fairly and adequately protect the interest of the class. FED. R. CIV. P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining adequacy. First, the class representative must have common interests with those unnamed class members. In re American Medical Systems, Inc., 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted). Second, it must appear that the class representative will vigorously prosecute the action with the assistance of qualified counsel. Id. According to the circuit, "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." Id.

Here, Capital Invest has common interests with the unnamed members of the class. Both Capital Invest and the other class members seek to recover their losses in connection with Defendants' alleged conduct. There is nothing to indicate that Capital Invest, as the class representative, would not vigorously prosecute the interests of the class. Clearly, Capital Invest has the need seek to recovery for its own losses. As such, there is no reason for this Court to find that Capital Invest would not just as vigorously prosecute and protect the interests of the class. As Capital Invest notes, there is no evidence before the Court of any antagonism between the interests of Capital Invest and the interests of the class members. Therefore, the Court sees no reason why Capital Invest cannot or would not vigorously prosecute the class members' claims.

13

There is also no evidence that the proposed lead counsel, Bernstein Litowitz, is not qualified counsel. In making this determination, the Court must consider whether the proposed counsel are qualified, experienced, and generally able to conduct the litigation. See Stout v. J.D. Byrider, 228 F.3d 709, 717 (6th Cir. 2000). Having reviewed the resume of Bernstein Litowitz, proposed lead counsel in this action, the Court notes that the firm's litigation practice concentrates in the area of securities class actions. The firm also markets itself as "the nation's leading firm in representing institutional investors in securities fraud class action litigation."[10]

A review of the firm's resume reveals that it is qualified in securities class action lawsuits. Other courts have found this as well. See, e.g. Piven v. Sykes Enterprises, Inc., 137 F.Supp.2d 1295, 1306 (M.D. Fla. 2000) (finding Bernstein Litowitz experienced in litigating class action lawsuits); Osher v. Guess?, Inc., No. CV01-00871LGB, 2001 WL 861694 at *4 (C.D. Cal. 2001) (unreported) (finding Bernstein Litowitz experienced in litigating complex securities actions after reviewing the firm's resume); Armour v. Network Assoc., Inc., 171 F.Supp.2d 1044, 1052 (noting that "[t]he firm resume of Bernstein Litowitz reveals its competence to provide class representation in a securities class action."). In fact, the firm's literature boasts numerous statements from various district court judges across the country who have commented on the outstanding performance of Bernstein Litowitz in various actions where excellent results have been achieved for plaintiff class members. On the whole, there is nothing that would indicate to this Court that Bernstein Litowitz is anything but qualified, experienced, and generally able to conduct the litigation in this case.

---

[10] See Capital Invest, Mot. to Consolidate at Exh. D.

14

## VI. Conclusion

For the reasons stated above, Capital Invest's motion for appointment as lead plaintiff is granted. In keeping, its request appoint the law firm of Bernstein Litowitz as lead counsel and the law firm of Climaco Lefkowitz as liaison counsel is granted. All other pending motions are hereby denied.

IT IS SO ORDERED.

_____May 12, 2004_____          ____/s/ John R. Adams_____
Date                              John R. Adams
                                  U.S. District Judge

15

ENTERED IN DOCKET  o y
5 / /7 /